31 C.C.P.A. (Patents)

## In re PERRIN.
### Patent Appeal No. 4874.

Court of Customs and Patent Appeals.

April 4, 1944.

Ralph F. Miller, of Washington, D. C. (C. H. Biesterfeld, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting all of the claims of appellant's application for a patent, on the ground of lack of invention over the prior cited art.

Appellant's application was filed on May 4, 1940, and recites that it is "a continuation-in-part of application Serial No. 138,-266 filed April 21, 1936, jointly by me, J. G. Paton and E. G. Williams." A patent, No. 2,219,700, was issued on said joint application on October 29, 1940.

Appellant's instant application discloses and claims insulated electric conductors in which the conducting element is insulated by use of a solid polymer of ethylene.

Claim 1 is illustrative and reads as follows:

"1. An insulated electrical conductor the insulating material of which comprises a polymer of ethylene which is solid at normal temperatures and which corre-

sponds in composition substantially to $(CH_2)_x$."

The references cited are:

Rohm et al., 1,982,831, December 4, 1934.

British Patent, 471,590, September 6, 1937.

Hall et al., 2,169,097, August 8, 1939.

Schupp et al., 2,177,266, October 24, 1939.

The cited British patent in which appellant is named as one of the joint inventors discloses the polymer of ethylene claimed in the instant case, and states they have "good dielectric properties and may be used for electrical insulation in general."

While appellant's instant application was filed on May 4, 1940, it is his contention that he is entitled to the benefit of the date of the joint application hereinbefore referred to, viz., April 21, 1936. If he is correct in this contention, said British patent could not be considered as prior art and hence not available as a reference. The same is true of the references Schupp et al. and Hall et al., for both patents were issued subsequent to the filing date of the joint application above referred to.

The patent to Rohm et al. discloses the use of a resin consisting of a polymerized ester of acrylic acid as the insulating medium in an electrical conductor.

The examiner finally rejected all of the claims upon the ground that they define an old combination in view of the references. He also rejected them as being unpatentable over the British patent alone. He further held that appellant's application, being a sole application stated to be a "continuation-in-part" of said joint application, was not entitled to the benefit of the date of the joint application, and that all of the patents cited were valid references. He further held that even if a continuation-in-part sole application may under any circumstances relate back to a joint application, this could not be done in the instant case without a disclaimer of the subject matter by the other joint applicants. Thereupon, appellant filed a request for reconsideration together with an affidavit made by Williams, one of the joint applicants. This affidavit reads as follows:

"I, Edmond George Williams, being duly sworn, depose and say that I am one of the three inventors named in U. S. patent 2,219,700 (issued in the name of John Greeves Paton, Michael Wilcox Perrin and Edmond George Williams) which claims films of ethylene polymer and which resulted from application Serial No. 138,266 filed April 21, 1937.

"I further depose and say that I am not the inventor of the improved electrical conductors insulated with ethylene polymer which were disclosed in application Serial No. 138,266 and which are now claimed after requirement for division by the Patent Office in the above entitled sole application Serial No. 333,441 with which I am familiar and which was filed by Michael Wilcox Perrin with whom I had previously filed jointly the above mentioned application Serial No. 138,266.

"I further depose and say in verification of the above mentioned facts with regard to inventorship that whereas I was named with said Michael Wilcox Perrin in the British application 12202 filed April 29, 1936 describing the films, a separate sole British application 12203 describing application of the polymer in insulation was filed in the name of said Michael Wilcox Perrin, both of said British applications being acknowledged in said earlier joint U. S. application Serial No. 138,266 and in the above entitled sole application Serial No. 333,441.

"I further depose and say that John Greeves Paton, who in addition to said Perrin and myself was one of the inventors named in said patent, has been reported missing by the naval authorities.

"I further depose and say that insofar as I am aware there is no reason to believe that the said Paton, if available, would not submit an affidavit alleging the same facts given herein.

"Edmond George Williams."

Appellant's British application 12203 and the British joint application 12202, referred to in the affidavit, appear in the record.

In appellant's British sole application it is stated that the invention relates to means for the electrical insulation of materials by means of polymers of ethylene produced according to the methods described in certain applications which later formed a part of the subject matter of the cited British patent.

Said sole application further states:

"The invention may take many and varied practical forms. These are based on

the fact that, in bulk form, the solid polymers of ethylene *have been found* to possess a high electrical resistance, a low power factor and a high breakdown voltage." (Italics ours.)

The British joint application 12202, made by appellant, Paton, and Williams, relates to films and their manufacture, employing polymers of ethylene, produced by the methods described in the applications referred to in the sole application 12203.

This joint application states:

"The films prepared according to this invention are extremely impermeable to water or water vapour and resistant to many chemicals. Thus, the rate of diffusion of water vapour through an ethylene polymer film is of the order of 80 times lower than through a viscous film of similar thickness. The films have also excellent electrical insulating properties, thus a high electrical resistance, a low power factor and a high breakdown voltage.

"These films have many uses, including their use for wrapping and protective purposes in general."

The examiner declined to reopen the case for further prosecution, but in his "Statement" on appeal he stated that even if it should be held that a sole application may be a continuation-in-part of a joint application, there must be disclaimers of the invention involved in the sole application made by all of the other joint applicants of the parent application; that one of the joint applicants, Paton, had not made such disclaimer, and that there is no proof that he will never be in a position to express his view upon the subject.

The Board of Appeals, in its original decision, affirmed the decision of the examiner upon all of the grounds stated by him. It stated that while a sole application may be entitled to be regarded as a division of a joint application, under the principle declared in the case of In re Roberts, 49 App.D.C. 250, 263 F. 646, it did not feel warranted in extending the principle to continuations-in-part. It also referred to the fact that disclaimers had not been filed in the instant case by all of the joint applicants in the earlier case.

Appellant filed two petitions for reconsideration of the board's decision, and in connection therewith filed an affidavit by the secretary of the assignee of both the instant application and the joint application. Said affidavit reads as follows:

"I, John Egbert James, being duly sworn, depose and say that I am the Secretary of the Imperial Chemical Industries Limited, referred to hereinafter as I.C.I.

"I further depose and say that I.C.I. is the assignee of application Serial No. 136,-266 (U. S. Patent 2,219,700) which was filed April 21, 1937 jointly by Michael W. Perrin, John G. Paton and Edmond G. Williams and of which the above entitled application by said party Perrin, also assigned to said assignee, is a continuation-in-part wherein the common subject matter is the electrically insulated conductor claimed in the above entitled application and claimed in the corresponding British Patent 12203/36 filed April 29, 1936 in the name of said Perrin by said assignee.

"I further depose and say with regard to the subject matter disclosed in said joint application 138,266 of Perrin, Paton and Williams (all of said parties being employees of said assignee at the time of their inventions) that the records of the assignee show that the electrically insulated conductors disclosed but not claimed in said joint application constitute the invention only of said Perrin for which said British application 12203/36 was filed in the name of Perrin by said assignee, and that said Paton and Williams were the inventors only of the subject matter claimed in said U. S. joint application for which a British application 12202/36 was also filed April 29, 1936 in the name of Paton and Williams by said assignee.

"I further depose and say that this affidavit is being made by the assignee instead of by the party Paton because said party Paton has been reported missing by the naval authorities.

"John Egbert James."

The board declined to consider this affidavit, and stated: "The petition is denied with respect to any change in decision."

Thereupon, appellant petitioned the commissioner that jurisdiction be restored to the Board of Appeals, and that said affidavit last above quoted be considered.

In response to this petition, the commissioner ordered that appellant's petition to him be treated as a petition for reconsideration of the board's decision, and restored the jurisdiction of the Board of Appeals "for the purpose of considering the said petition, and taking appropriate action thereon." Thereafter the board remanded the case to the examiner for original con-

sideration of said affidavit in connection with the rejection of the claims. Thereafter, the examiner made a supplemental statement to the board from which we quote:

"The affidavit of John Egbert Jones [James], secretary of Imperial Chemical Industries Ltd., assignee of this application, made for that corporation, is simply a statement, based upon information and belief, that Perrin is the inventor of the subject matter of joint application 138,266, of Perrin, Paton and Williams relating to electrically insulated conductors, and a statement of opinion that the present application is a continuation-in-part of that joint application.

"If it is assumed that a sole application may be a continuation-in-part of a previously filed joint application, and no authority for such a holding is known, we are still confronted by the fact that no precedent exists for the acceptance of an affidavit of the assignee, such as that in question, for the disclaimer of one of the inventors that would be required under the in re Roberts practice."

Thereafter, the board rendered another decision, again affirming the decision of the examiner upon the grounds stated by him. In its decision the board stated:

"In the Roberts case, In re Roberts, 49 App.D.C. 250, 263 F. 646, 1920 C.D. 158; it was established that one of two joint inventors could file a new sole application for matter that is, in substance, that of the former joint application and entitle it a continuation with benefit of continuity and of filing date of the joint case. But this was held to be conditional provided certain showing be made. Such showing appears to include among other requirements, admission by the eliminated party that he was not a joint inventor, that the subject matter was the sole invention of the other applicant. Comparing the present situation it appears that no admission of the above kind has been secured from one of the three joint parties (Paton) of the application Serial No 138,266 and British patent 471,590. Affidavits of record assert that Paton has been reported missing by the British Naval Authorities. We regard the affidavits as insufficient to establish the matter of inventorship of an invention or disclaimer thereof.

"The present case differs further from the facts involved in the Roberts case in that there is wide difference in disclosures as between the British patent 471,590, the intervening application Serial No. 138,266 and the present specification. There is little resemblance between them either as to subject matter or form of arrangement of disclosure or claims. It becomes highly uncertain as to any exact line of division between matters of joint and sole invention, respectively, in connection with the varying scope that can be attributed to the expression continuation-in-part."

Thereafter appellant appealed to this court from both decisions of the board.

From the foregoing recital of facts it will be seen that a very unusual and complicated situation is presented.

In the case of In re Roberts, supra, it was held that under certain circumstances a new application by a sole inventor should be treated as a continuation of an application by joint inventors. We quote from the syllabus in that case as follows:

"Where, by mistake and without fraudulent intention, a patent application filed by two inventors embraced an invention of which one of them was sole inventor, a new application, filed by him, should have been treated as a continuation of the original application, and hence not barred by an interfering patent issued more than two years prior to its filing.

"A patent applicant, seeking to correct his own mistake in filing an application jointly with another, must act with reasonable diligence, and assume the burden of establishing his good faith."

In our decision in the case of Manny v. Garlick et al., 135 F.2d 757, 30 C.C.P.A., Patents, 1008, we discussed the case last above cited, and approved the principle there declared. We further held in accordance with the declarations in the cited case that in order that a sole application may be treated as a continuation of a joint application the party filing the sole application must act with reasonable diligence after discovering that the invention claimed was not the joint invention of himself and his joint applicant, and that he was the sole inventor of the invention claimed.

It is our view that the particular names by which an application is called is not so material as is the subject matter of the application.

It is, of course, well established, as held in the case of In re Roberts, supra, that a sole application disclosing and claiming the same subject matter as an earlier

joint application may, under certain circumstances, be entitled to the benefit of the date of the joint application. We perceive no reason why, under like circumstances, the same should not be true of a sole application which is, in fact, a continuation-in-part of an earlier joint application, but in such case the sole application should clearly point out what portion of the subject matter of the joint application was his sole invention. In the case at bar, appellant has not done this. True he has clearly pointed out that he claims as his invention the electrical conductors described in the claims, but it is of the greatest importance, in determining the question of patentability of the claims, whether the discovery that polymers of ethylene had insulating properties was his alone, and was not a joint discovery, or the discovery of one of the other joint applicants.

There is no contention here that appellant invented the composition polymers of ethylene. It is conceded that such composition was the joint invention of appellant and others in accordance with the processes described in United States patent 2,153,553, issued to appellant, Fawcet, and Gibson as joint inventors. Unfortunately this patent is not part of the record before us, although referred to in the patent issued upon the joint application of which the instant application is claimed to be a continuation-in-part.

If appellant alone did not discover polymers of ethylene possessed insulating properties, but such discovery was made jointly by the joint applicants or by one of them other than appellant, then the claims before us were properly rejected upon the ground of old combination as disclosed in the patent to Rohm et al., and, furthermore, the subject matter of the claims was not the sole invention of appellant.

However, we prefer to rest our decision upon the ground that appellant's instant application cannot be considered a continuation-in-part of the joint application for the reasons stated by the Board of Appeals, viz, that appellant's instant application does not present any exact line of division between matters of joint invention, the subject of the joint application, and sole invention claimed in appellant's instant application.

As stated by the board, there is little resemblance between them either as to subject matter or form of arrangement of disclosure or claims.

Appellant's instant application does not state that *he* discovered that polymers of ethylene possessed insulating properties, but states that the electrical conductor is insulated with "an insulating material" and it then proceeds to state the process by which the material is produced, which process the joint application states was the subject of another joint application in which appellant was one of the applicants.

The joint application, serial No. 138,266, here directly involved, states:

"The pellicles, tapes, ribbons, coatings, and the like of this invention are particularly useful for electrical insulating purposes because of their excellent dielectric properties."

The paragaph above quoted does not appear in the patent issued upon said joint application. This fact might, standing alone, create the inference that appellant made the discovery that polymers of ethylene possessed insulating qualities. However, the patent to the joint applicants discloses that application for the same invention was made in Great Britain on April 29, 1936. This British application is in the record as hereinbefore stated. It discloses that the joint applicants declared that the polymers of ethylene films there claimed "have excellent electrical insulating properties."

In appellant's sole British application, hereinbefore quoted from, appellant did not claim to have discovered that polymers of ethylene had insulating properties. The statement in the application is that the invention there claimed may take many practical forms, and "These are based on the fact that, in bulk form, the solid polymers of ethylene have been found to possess a high electrical resistance, a low power factor and a high breakdown voltage."

It would have been easy for appellant to have stated in his instant application, if such was the fact, that he alone discovered that polymers of ethylene possessed insulating properties, but he did not do so. Not only did appellant fail to make such disclosure, but it appears from the request for reconsideration of the final rejection by the examiner, appellant's counsel attributed the disclosure of the insulating properties of polymers of ethylene to the joint applicants.

Said motion for reconsideration states:

The facts regarding the matter of inventorship are as follows:

"The subject matter of the parent application, Serial No. 138,266 filed April 21, 1937 jointly by the present applicant with Paton and Williams, was filed in Great Britain as two separate applications within twelve months prior to filing the mentioned United States parent application. One of the British cases 12202/36 filed jointly in the name of the present applicant Perrin with Paton and Williams is directed to ethylene polymer films as the invention *with disclosure of electrical conductors insulated therewith*. The other case, 12203/36, in the name of the present applicant Perrin alone describes 'the invention as consisting of the ethylene polymer electrically insulated conductors.

"These two British cases were combined in a single United States case which forms the parent application because the subject matter of the two British cases seemed too close for separate patents in this country unless the Office for reasons of its own required division.

"Division of the claims to the ethylene polymer insulated conductor was required in the parent application, traversed, and made final. Claims directed to the subject matter now claimed in this case were continuously pending in the parent case until the filing of the present sole application." (Italics ours.)

It thus appears that when said motion for reconsideration was made appellant's counsel deemed that the disclosure of the insulating properties of polymers of ethylene 'was properly made in the joint application and was not the discovery of appellant alone.

Appellant's instant application contains several other matters which make it difficult, if not impossible, to determine any exact line of division between his instant application and the joint application. However, in view of our foregoing discussion of the discovery of insulating properties of polymers of ethylene, we do not find it necessary to discuss the other matters in appellant's instant application, and their relation to the joint application.

■ It is elementary that to constitute a proper division of an application, a different invention must be involved.

Inasmuch as it appears to us to be uncertain as to what portion of appellant's disclosure relates to what is claimed to be his sole invention and what portion thereof relates to the joint invention disclosed in the joint application, we are in accord with the holdings of the Patent Office tribunals that appellant is not entitled to the benefit of the date of the joint application.

■ It follows that all of the patents cited are valid references against the patentability of the allowed claims, and they clearly negative patentability thereof.

It appears to us that the involved claims might have been allowable in the joint application had not division been required. Appellant might have appealed to the Board of Appeals from the order requiring division, but failed to do so.

If appellant was the first to discover that polymers of ethylene possessed insulating qualities, it is unfortunate that this was not clearly set out in his instant application and in the disclaimer of Williams, one of the joint applicants, but we must pass upon the record as made in the Patent Office.

In view of our holding with respect to appellant's application not being entitled to the benefit of the date of the joint application, it is unnecessary for us to pass upon the question of whether the fact that one of the joint applicants, Paton, was reported "missing" relieved appellant from furnishing a disclaimer from him. However, we think it proper to observe that the affidavits presented do not state that appellant alone discovered that polymers of ethylene have insulating properties.

We also think it proper to observe that while appellant relies upon the case of In re Roberts, supra, to establish that a sole application may, under certain conditions, be entitled to the benefit of an earlier joint application, it must be shown, as there held, that the joint application was made through mistake and that appellant acted with reasonable diligence to correct it.

The Patent Office tribunals did not pass upon either of these questions, although we think that they should have done so for the reason that if we were of the opinion that they erred in holding that appellant's application could not be considered as a continuation-in-part of the joint application for the reasons stated by them, we would then have been able to review their findings upon the questions of mistake and diligence which also go to the question of appellant's right to have his application considered as a continuation-in-part of said joint application. However, in concluding

that the decision of the board should be affirmed, we have not considered these questions.

The decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, did not participate in the consideration or decision of this case.